**IN THE COURT OF APPEALS OF IOWA**

No. 16-1276
Filed September 28, 2016

**IN THE INTEREST OF N.H.,**
**Minor Child,**

**J.P., Father,**
    Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Colin J. Witt, District

Associate Judge.


    A father appeals from the order terminating his parental rights.
**AFFIRMED.**



    Jamie L. Hunter of Dickey & Campbell, P.L.C., Des Moines, for appellant

father.

    Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant

Attorney General, for appellee State.

    Nicole Garbis Nolan of the Youth Law Center, Des Moines, for minor child.



    Considered by Danilson, C.J., and Mullins and Bower, JJ.

**DANILSON, Chief Judge.**

A father appeals the termination of his parental rights.[1]  The father contends there were not reasonable efforts made to reunify him with the child, the juvenile court should have granted him an additional six months to seek reunification, termination was not in the child's best interests, and the court need not have terminated his rights based on statutory exceptions.  The juvenile court entered a thoughtful and thorough ruling rejecting the father's claim of lack of reasonable efforts and his request for additional time to seek reunification.  Because there is clear and convincing evidence to support termination under Iowa Code section 232.116(1)(f) (2015), termination is in the child's best interests, and no statutory factor weighs against termination, we affirm.

We review termination proceedings de novo.  *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).  "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses."  *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

N.H. is a nine-year-old child who has been adjudicated a child in need of assistance (CINA), has been out of parental custody for at least twelve consecutive months, and could not be returned to the father at the time of the termination hearing because the father was incarcerated.  Consequently, there is clear and convincing evidence to support termination of the father's parental rights under section 232.116(1)(f).

"Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the child[]'s best

---

[1] The mother's parental rights were also terminated, and she does not appeal.

interests." *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012); *accord* Iowa Code § 232.116(2). We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *accord In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) "by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41.

Here, the father has been incarcerated more than half the child's life. The child has been adjudicated CINA twice and has lived the majority of his life with his paternal grandmother. The most recent CINA proceedings were initiated in March 2015 when the child was removed from the mother's custody due to her illegal substance abuse. The father was then incarcerated for drug convictions. The child was adjudicated CINA in May 2015 and was transferred from one relative placement to the care of the paternal grandmother after the CINA adjudication. Eleven months after the child was removed from the mother's custody, in February 2016, the father was released from prison to a residential facility and began to engage in services with the department of human services (DHS). The father gained employment, found housing, and was attending twice-weekly visits with his child. DHS was prepared to move forward with semi-supervised visits. Unfortunately, on June 6, 2016, the paternal grandmother died

unexpectedly and the child was placed again with maternal relatives.[2]  The father

concedes the child could not be returned to his care at the time of the termination

trial in July 2016 because he was in jail and facing additional drug charges.

At termination, the father testified he was a drug addict and had relapsed

on methamphetamine the day after his mother died, but he asserted: "I need

therapy.  I don't need treatment, I need therapy."  Yet, after his relapse, the father

participated in a substance abuse evaluation, and it was recommended he enter

into a long-term residential drug-treatment program.  He testified the child could

live with him during the program after a number of months if he made sufficient

progress.  This child has already been in parental limbo for more than a year.

The child's therapist stated the child was in need of stability and permanency.

We conclude termination and adoption will provide stability and is in the child's

best interests.

Section 232.116(3) provides that "[t]he court need not terminate the

relationship between parent and child" under certain circumstances.  The father

claims that his rights need not be terminated because the child is in the care of

relatives and because the child is his "best friend."   Although section

232.116(3)(a) allows the juvenile court not to terminate when a "relative has legal

custody of the child," N.H. is not in the legal custody of relatives but rather was

"placed" with relatives.  *See A.M.*, 843 N.W.2d at 113.  And section 232.116(3)(c)

provides that termination need not occur if "[t]here is clear and convincing

evidence that the termination would be detrimental to the child at the time due to

---

[2] The father asserts that DHS "removed" the child from his care when the grandmother died, but the father did not have the child in his custody or care.

the closeness of the parent-child relationship."  This record does not establish that type of bond.

> Iowa law requires the DHS to "make every reasonable effort" to return children to their homes "as quickly as possible" consistent with their best interests.  Iowa Code § 232.102(7); *see also* [*In re*] *C.B.*, 611 N.W.2d [489,] 493 [(Iowa 2000)].  As defined in the statute, "reasonable efforts" are those measures that "make it possible for the child to safely return to the family's home."  Iowa Code § 232.102(10)(a).  In determining if the DHS has satisfied this requirement, the court considers "[t]he type, duration, and intensity of services or support offered or provided to the child and the child's family."  *Id.* § 232.102(10)(a)(1).
> . . . .
> . . . [W]e are mindful the reasonable-efforts requirement "is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts."  *See C.B.*, 611 N.W.2d at 493.

*In re C.W.*, No. 16-0909, 2016 WL 4379336, at *4 (Iowa Ct. App. Aug. 17, 2016).

The termination-of-parental-rights hearing was scheduled for July 11. Four days before the hearing, the father filed a motion contending DHS had failed to offer services to help him cope with his mother's death, he had relapsed, and was currently in jail.  He asked that the court find reasonable efforts had not been made and order the father provided "with access to resources [to] help him cope with the sudden death of his mother and underlying [unidentified] mental health issues."  However, at the hearing, the DHS social worker testified she was unable to contact the father between June 6 (the date of his mother's death) and June 21 (the date he was arrested) despite several attempts to do so.  She later learned he had been arrested for possession of drugs and a weapon.  The father acknowledged he was "probably bad at answering the phone."  We are not persuaded the State failed in its duty to make reasonable efforts in this case.

Although we sympathize with the father in the loss of his mother, at the very time his son needed him because the child had also lost his grandmother and long-time caretaker, the father returned to the use of methamphetamine. The best interests of the child require termination.  We therefore affirm.

**AFFIRMED.**